IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01490-RM-CBS

KARL T. ANDERSON, solely in his capacity
as Chapter 7 Trustee for the bankruptcy estate of
Robert Leone Davies and Amber Tracey Davies,

        Plaintiff,

v.

SEVEN FALLS COMPANY, a Delaware corporation, d/b/a
THE NEW SEVEN FALLS COMPANY, d/b/a
THE COTTAGE COMPANY, d/b/a
SEVEN FALLS PIPELINE & RESERVOIR,

        Defendant.

**ORDER REGARDING MOTION TO PERMIT
DISCLOSURE OF PLAINTIFF'S REBUTTAL EXPERT**

Magistrate Judge Shaffer

    PENDING before the court is Plaintiff Karl T. Anderson's Motion to Permit Disclosure of Plaintiff's Rebuttal Expert (doc. #71) filed on May 1, 2013. With the instant motion, Mr. Anderson seeks leave to designate, out of time, an unidentified retained expert who purportedly will rebut opinions disclosed by Defendant's experts on February 1, 2013. Defendant Seven Falls Company filed its Response to Plaintiff's Motion to Permit Disclosure of Plaintiff's Rebuttal Expert (doc. #84) on May 22, 2013. In opposing Mr. Anderson's Motion, Defendant argues that Plaintiff has failed to establish the requisite "good cause" required by Fed. R. Civ. P. 16(b)(4), and seeks relief from his own dilatory actions.

    By Order of Reference (doc. #4), this matter was referred to the Magistrate Judge to,

1

*inter alia,* "conduct non-dispositive proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b)." The pending motion was referred to this court on May 6, 2013. The court heard oral argument during a motions hearing on July 1, 2013. I have carefully considered the parties' briefs, the arguments of counsel, the entire case file, and applicable case law. For the following reasons, Plaintiff's motion is denied.

## PROCEDURAL BACKGROUND

Amber Davies commenced this action on June 8, 2012, by filing a Complaint that asserted a claim for common law negligence, as well as statutory claims under Colorado's Premises Liability Statute, C.R.S. § 13-21-115.[1] Ms. Davies alleged that she sustained physical injuries as a result of stepping into a gap in a walkway located at a privately owned and operated commercial visitor property located in or near Colorado Springs, Colorado. Ms. Davies renewed these claims in an Amended Complaint (doc. #6) filed on June 14, 2012.[2] Defendant Seven Falls Company filed an Answer (doc. #19) to the Amended Complaint on July 19, 2012 which generally denied the liability claims raised by Ms. Davies. Included within Defendant's affirmative defenses were the assertions that Ms. Davies' injuries and damages were "proximately caused and contributed to by the negligence and fault of Plaintiff, and other entities," that Ms. Davies had failed to "exercise reasonable effort and/or care" to mitigate her alleged damages, and that Ms. Davies' "damages were caused by intervening and superseding

---

[1]This case originally was assigned to District Judge Christine M. Arguello, and later reassigned to District Judge Raymond P. Moore upon his appointment to the District Court. *See* Order dated May 1, 2013 (doc. #72).

[2]On April 16, 2013, Ms. Davis moved For Substitution of Party Filed By Real Party In Interest Karl T. Anderson, Solely as Chapter 7 Trustee for the Bankruptcy Estate of Robert Leone Davies and Amber Tracey Davies (doc. #63). I granted that motion on April 18, 2013.

causes, events or conditions" or "caused by pre-existing or prior causes, events or conditions."

On August 13, 2012, pursuant to an Order issued by this court, the parties submitted a proposed scheduling order (doc. #24) that substantially departed from the numerical limits set forth in the District Court's Local Rules. For example, the parties proposed "no limit" on the number of requests for production under Fed. R. Civ. P. 34, and agreed that each party could serve on any other party 50 interrogatories, including discrete subparts, and 50 requests for admission. The parties also contemplated an extended period for discovery. The proposed scheduling order called for Plaintiff to disclose "Rule 26(a)(2) expert information and reports" on March 21, 2013, Defendant to furnish "Rule 26(a)(2) expert information and reports" on May 21, 2013, and Ms. Davies to disclose "Rule 26(a)(1) rebuttal expert information and reports" on June 21, 2013.[3] The proposed scheduling order provided additional information regarding Ms. Davies claims. Plaintiff's counsel asserted that "[a]s a direct and proximate result of the Defendants (sic) unreasonable failures, Plaintiff has developed Complex Regional Pain Syndrome [CRPS], a medical condition which is a (sic) permanent and debilitating, and that requires ongoing future care."[4]

---

[3]The parties' proposed scheduling order contemplated that non-expert discovery would be completed 60 days prior to trial, and that "all expert depositions, including non-retained expert health care providers and treating physicians," would be completed 45 days prior to trial. These deadlines were unworkable given Judge Arguello's practice standards. Judge Arguello customarily sets a trial date only after the parties and the magistrate judge hold a final pretrial conference, which typically occurs 3-4 months after the close of discovery.

[4]The National Institute of Neurological Disorders and Stroke (NINDS), which is a component within the National Institutes of Health, describes Complex Regional Pain Syndrome as "a chronic pain condition most often affecting one of the limbs . . . usually after an injury or trauma to that limb." NINDS literature states that "CRPS systems vary in severity and duration" and that "[a]nyone can get CRPS." "Doctors aren't sure what causes some individuals to develop CRPS while others with similar trauma do not." *See* "Complex Regional Pain

I held a Fed. R. Civ. P. 16(a) scheduling conference with counsel on August 21, 2013. In an effort to establish reasonable discovery deadlines, the court asked each side to estimate the number of expert witnesses they would be designating under Fed. R. Civ. P. 26(a)(2).

> Ms. GILBERTSON [Defendant's counsel]: At this point, Your Honor, I don't know who we're going to need. We've just now gotten the disclosures and need to go through those and figure out to what extent and what scope of experts we're going to need at this point so I can't answer that question today. . . . I would defer - - depending on the experts that plaintiff would be designating that was going to be telling me how many that I'm going to have to be designating.
>
> Mr. GEHLAUSEN [Plaintiff's counsel]: My estimate, Your Honor, would be five max. . . . I have a life care planner. I have a functional capacity evaluator. I have an economist. That's three. Because all of these physicians are in California, I may want to hire an independent medical expert, so that's four. Five is caution.

*See* Transcript of Proceedings on August 21, 2013 (doc. #77), at 18-19. I also expressed my disinclination to adopt the three-phased approach for designating expert witnesses incorporated in the parties' proposed scheduling order, preferring instead to set a date for designating "affirmative experts" and a separate date for designating "rebuttal experts." As the court explained,

> [U]nder 26(e) an expert has a duty to supplement their disclosures consistent with the rule and the case law. So if – if defense experts offer new opinions that were not anticipated then plaintiff in that instance would clearly have the right to supplement their reports.[5] But if I give you three rounds, I mean, this thing will

---

Syndrome Fact Sheet,"
http://www.ninds.nih.gov/disorders/reflex_sympathetic_dystrophy/detail_reflex_sympathetic_distrophy.htm. Plaintiff's counsel made a similar observation on August 21, 2013, acknowledging that "there's no set treatment for CRPS and a lot of different people suggest different things and – and people like our client try to do anything and everything to overcome this condition." *See* Transcript of Proceedings on August 21, 2012 (doc. #77), at 6.

[5]*See, e.g., Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (permissible supplementation of an expert's disclosures "means correcting inaccuracies, or

>     drag on and it's just going to add exponentially to the costs. So the deadline for
>     affirmative experts is November 1. The deadline for rebuttal experts is February
>     1st. And I'm assuming right now unless the defendant has raised some affirmative
>     defenses I suspect that virtually all of defendants' experts will be rebuttal experts,
>     so I would expect them to be disclosed on February 1st.[6]

*Id.* at 27. During the scheduling conference on August 21, 2012, neither side expressed any opposition to the court's deadlines for expert disclosures, or sought any clarification on how those deadlines would be implemented.

On August 30, 2012, this court entered a Scheduling Order (doc. #28) that incorporated a discovery deadline of March 30, 2013 and a dispositive motion deadline of April 30, 2013, as well as the expert disclosure deadlines discussed during the August 21st conference. The parties further acknowledged that "[t]his scheduling order may be altered or amended only upon a showing of good cause."

Plaintiff designated her expert witnesses on November 1, 2012, and Defendant designated its "rebuttal experts" on February 1, 2013. Ms. Anderson moved to Exclude Improperly Designated Expert Testimony (doc. #56) on March 26, 2013, arguing that the

---

filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure"); *In re Safeguard Scientifics*, 2004 WL 2644393, at *1 (E.D. Pa. Nov. 17, 2004) (noting that an expert is required to supplement a prior disclosure "[w]here additional relevant information because available such [that] the initial expert report is rendered 'incomplete or incorrect'"). *But see Carter v. Finely Hospital*, 2003 WL 22232844, at *2 (N.D. Ill. Sept. 22, 2003) ("It is disingenuous to argue that the duty to supplement under Rule 26(e)(1) can be used as a vehicle to disclose entirely new expert opinions after the deadline established by the court."); *Coles v. Perry*, 217 F.R.D. 1 (D.D.C. 2003) (noting that the objectives underlying Rule 26(a)(2)(B) would be nullified if an expert was permitted to "supplement" an earlier report by addressing a new matter after discovery has closed).

[6]*Cf. Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (acknowledging that a defendant asserting an affirmative defense bears the burden of proof and "must establish beyond peradventure *all* of the essential elements of the . . . defense to warrant judgment in his favor").

5

opinions of Drs. Kevin Nagamani, Robert Kleinman, and Philip Engen, and Anthony Piana, D.C. should have been disclosed on or before November 1, 2012 as they do not constitute "rebuttal" evidence. Plaintiff elected not to depose Defendant's experts prior to filing her motion to strike. *See* Defendant's Response to Plaintiff's Motion and Brief to Exclude, at 5. In summary, the Rule 26(a)(2)(B) reports prepared by Drs. Nagamani, Kleinman and Engen review Ms. Davies' medical history, acknowledge the diagnoses by Plaintiff's treating physicians, summarize the defense expert's findings and conclude, in pertinent part, that Ms. Davies' diagnosis of CRPS is not supported by sufficient objective criteria.[7] Plaintiff's Motion to Exclude argued that

> If Defendant were allowed to submit the testimony of these experts, under the current scheduling order, Plaintiff will be denied an opportunity to submit her own rebuttal reports to rebut Defendant's late reports. She will also be put to the expense necessary to hire experts to rebut such reports. If, on the other hand, the scheduling order is amended to allow Plaintiff time to respond with her own rebuttal reports, that additional time will necessarily extend the discovery cut off unless a trial date is scheduled now for a time in 2014.[8]

*See* Plaintiff's Motion to Exclude Improperly Designated Expert Testimony, at 9. At the conclusion of a hearing on April 18, 2013, this court denied Ms. Davies' motion, believing that

---

[7]*See EEOC v. JBS USA, LLC*, 2013 WL 3302429, at *6 (D. Colo. July 1, 2013) (noting that a rebuttal expert witness "is a witness 'intended solely to contradict or rebut evidence on the same subject identified' in the expert report of another party"); *Bleck v. City of Alamosa, Colo.*, 2012 WL 695138, at *4 (D. Colo. Mar. 5, 2012) (observing that a rebuttal expert's testimony is "tied to whether the party with the affirmative burden has presented evidence and/or duly disclosed expert on the same subject matter as that which will be rebutted by the disclosed rebuttal expert").

[8]Plaintiff's counsel made this same argument during the hearing on April 18, 2013, suggesting that "if the deadline of February 1st would limit the ability for the plaintiff to submit its rebuttal, which is what happened, the plaintiff is prejudiced . . . ." *See* Transcript of Proceedings on April 18, 2013 (doc. #94), at 6. Ironically, if Plaintiff had filed the pending motion shortly after receiving Defendant's expert disclosures and well in advance of the March 30, 2013 discovery cutoff, there would have been little, if any, threat to the pretrial deadlines set in August 2012.

exclusion of the proffered opinions would constitute an extreme and unwarranted remedy.[9] *See* Courtroom Minutes/Minute Order (doc. #66), dated April 18, 2013.[10]

While declining to exclude Defendants' experts, this court conceded that Plaintiff might well want to respond to the opinions expressed by those witnesses.

> THE COURT: [H]ave you retained an expert who speaks to this syndrome and opines that the plaintiff has the syndrome, or are you only relying on treaters for that?
>
> MR. SARGENT [Plaintiff's co-counsel]: At this point treaters and then for – there is a functional capacity expert and – and one who looks – looked at the – call it the economics or the damages of the matter. There is – I don't – off the top of my head I don't believe there is an expert to respond to the defense.

*See* Transcript of Proceedings on April 18, 2013 (doc. #94), at 50. Earlier in the hearing, I had suggested that perhaps Plaintiff could ask her previously designated experts to supplement their opinions pursuant to Fed. R. Civ. P. 26(e). *Id.* at 11-12.

Rather than pursuing that option, Plaintiff's counsel indicated that Ms. Davies might move for leave to designate her own rebuttal expert. Counsel advised the court that "[t]he plaintiff anticipates one more expert in light of Dr. Engen's 74-page report, as well as reference

---

[9]*See Summers v. Missouri Pacific Railroad Co.*, 132 F.3d 599, 604 (10th Cir. 1997). *Compare Barnes v. District of Columbia*, 289 F. R.D, 1, 13-14 (D.D.C. 2012) (after noting that motions to strike are disfavored, the court suggested that deposing the plaintiffs' experts ensured the defendant "a fair opportunity to respond to" the plaintiffs' expert reports). *See also Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 28 n. 16 (D.D.C. 2011) (in denying a motion to strike plaintiff's supplemental expert disclosure, the court concluded that any harm to the defendants could be minimized by deposing the expert).

[10]Plaintiff did not file an objection to this ruling pursuant to Fed. R. Civ. P. 72(a) or 28 U.S.C. § 636(b)(1)(A). *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991) (noting that the Tenth Circuit has "adopted a firm waiver rule when a party fails to object to the findings and recommendations of the magistrate judge" pursuant to Rule 72). *Cf. Wells v. Shriners Hospital*, 109 F.3d 198, 199 (4th Cir. 1997) ("If a party exercises his option not to file objections . . . he also chooses to waive his appeal.").

to Dr. Ochoa, . . . will seek to bring in an internationally recognized expert on CRPS." *Id.* at 46. Ms. Davies' attorney indicated that this expert had not been previously disclosed "[i]n large part because [Plaintiff's counsel] was under the belief – misunderstanding of how the court would treat the reports from the defense," and for that reason, "the plaintiff hasn't brought – or hasn't disclosed a – let's say does not have a retained expert that specifically addresses CRPS . . . ." *Id.* at 47 and 48. Counsel also did not know whether this proposed expert had already prepared a written report in accordance with Rule 26(a)(2)(B). *Id.* at 51.

On April 18, 2013, the court emphasized that "if the plaintiff wants to file a motion seeking leave out of time to designate a new expert, [her counsel is] certainly free to file that motion." *Id.* at 17.

> But I will tell you, if you file that motion I will have no choice but to look to Rule 16(b). In order for me to grant your motion, I am going to have to find good cause. I'm going to have to find that despite the fact that you got [Defendant's] disclosures on February 1st, you're not moving to designate a new expert until almost two months – three months after the fact, and . . . three weeks or so after the close of discovery. That's what you're going to have to demonstrate. And if you do that I'm more than happy to grant your motion. If you can't show good cause then its going to be somewhat problematic.

*Id.* at 17. The court also observed that a belated motion to designate a rebuttal expert might be more effective if accompanied by the proposed expert's report.

> THE COURT: If you draft a motion and you say I want leave to designate a rebuttal expert from whom I have not yet gotten a report, so all I'm doing is asking for leave to hold open the possibility of obtaining such a report, I'm not sure that would be the strongest argument. You'd be in a much stronger argument if you basically said, here is the quote/unquote rebuttal report that I would like to designate.
>
> MR. SARGENT: Okay.
>
> THE COURT: So then all – then the only issue is, in light of what the contents of the reports say, am I going to allow it. But – see, here's where it gets really tricky. You want to designate a rebuttal report. But if your – if this expert simply

> says I've looked at everything in the file and I think plaintiff's experts are right, I'm not sure that's a rebuttal of anything. That's just a me-too. So, if you want to characterize this person as a rebuttal expert, I think it would be very interesting to see what the report actually says.
>
> MR. SARGENT:   Noted, your honor.

*Id.* at 51-52.

Plaintiff filed the pending Motion to Permit Disclosure of Plaintiff's Rebuttal Expert (doc. #71) on May 1, 2013, almost two weeks after the hearing on April 18. Although the motion cited Rule 16(b)(4), Plaintiff suggested that the court's "good cause" analysis should be guided by the 9th edition of Black's Law Dictionary, which defines good cause as "a substantial reason, one that affords a legal excuse; legally sufficient ground or reason." To support a finding of good cause, Plaintiff insisted that the March 26, 2013 motion to exclude Defendant's experts was timely as "[n]o cutoff date for said motion existed" in the scheduling order, and that "[u]ntil the court denied the motion to strike the Defense experts, Plaintiff had no need for rebuttal reports." The motion further reasoned that

> Plaintiff should not be put to the great cost of obtaining expert rebuttal reports when the court could deny the request to allow same on some other basis. Furthermore, Plaintiff should not under these circumstances be held to the 30 day limit to submit rebuttal expert reports pursuant to Fed. R. Civ. P. 26(a)(2)(D)(ii) when Plaintiff had no time limit in which to submit any motion to strike the Defense expert endorsement. No trial date has yet been set. . . . As an equitable matter, no party will be prejudiced by time in permitting Plaintiff to add an expert witness.

*See* Motion to Permit Disclosure of Plaintiff's Rebuttal Expert, at 4-5. In response, Defendant argued that Mr. Anderson failed to satisfy the good cause requirement of Rule 16(b)(4).

The court heard oral argument on this motion on July 1, 2013. At that hearing, Plaintiff's counsel specifically asserted that his client's motion should be granted because "there is no trial

9

date, we are going to have to extend the discovery date for the simple reason my client has not reached maximum medical improvement[11] . . . and . . . because the tactic the defense used to submit their initial reports that you've already ruled on, we disagree with . . . ." *See* Transcript of Proceedings on July 1, 2013 (doc. #101), at 2-3. Counsel also indicated that his client had not provided a proposed rebuttal expert report because "[w]e're talking about experts that cost in the range of $500 an hour, and you could buy one of [Defendant's] other arguments to deny our motion and we would simply have wasted that money." *Id.* at 3. While he did not explain what those "other arguments" might be, counsel insisted that his client was "entitled to a ruling on [the earlier motion to strike] before we would have to file such expert reports."[12] *Id.* at 5. Elaborating on the scope of the proposed expert opinions, counsel explained

> the defense has raised the question of what is the actual test for CRPS that the treating physicians had diagnosed my client with. We want to put on evidence in that regard from experts. And incidentally, we have not disclosed the reasons for the tests, but we would like to put on at least one expert who will testify to the reasons for the clinical tests that were adopted,[13] and why other tests, so-called objective tests, are not valid tests, and also on the issue on the impropriety of the Colorado Workers' Comp test that the defense, by their reports, bring into this matter.

---

[11]This fact has no bearing on Plaintiff's ability to designate in a timely manner an expert to rebut opinions that were proffered on February 1, 2013. Moreover, the Final Pretrial Order submitted by the parties and entered by this court on July 16, 2013 specifically states that "[d]iscovery has been completed." *See* Doc. #105.

[12]If I credit this argument, the court is left to wonder why Plaintiff waited until four days before the discovery cutoff to file her motion to strike and, more importantly, why that motion did not seek, in the alternative, leave to file a rebuttal expert report.

[13]It would appear from this statement that Plaintiff proposes, in part, to present an expert to explain why the "affirmative" experts properly used particular clinical tests in diagnosing Ms. Davies' condition. If the court's understanding is correct, the proposed testimony may well exceed the scope of proper rebuttal opinion. Of course, the court's analysis would have been simpler if Plaintiff had provided an actual report as I suggested on April 18, 2013.

*Id.* at 4-5. During the July 1, 2013 hearing, the court observed that Plaintiff's motion

> is silent as to whether or not you've identified this [rebuttal expert]. Your motion is silent as to whether or not you've hired this expert. Your motion is silent as to how long it would take to prepare such a report. You're silent – you're motion is silent as to the general availability of your expert.

*Id.* at 20. At the conclusion of that hearing, I indicated that a written decision would follow.

## ANALYSIS

Rule 26(a)(2) of the Federal Rules of Civil Procedure explicitly states that "a party shall disclose to other parties the identity of *any person* who may be used at trial to present evidence under Rule 702, 703, or 705 of the Federal Rules of Evidence." *See* Fed. R. Civ. P. 26(a)(2)(A) (emphasis added). In the case of a retained expert, "this *disclosure must be accompanied* by a written report" that contains, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." *See* Fed. R. Civ. P. 26(a)(2)(B)(i) and (ii) (emphasis added). If the disclosed expert is a non-retained expert, such as a treating physician, the "*disclosure must state*" the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703 or 705, and "a summary of the facts and opinions to which the witness is expected to testify." *See* Fed. R. Civ. P. 26(a)(2)(C) (emphasis added). Rule 26(a)(2) plainly contemplates that disclosure of required information must be contemporaneous with the identification of the expert witness. *Cf. Fox v. Michigan Bell Telephone Co.*, 2009 WL 2170178, at *2 (E.D. Mich. July 20, 2009).

Rule 26(a)(2) disclosure obligations cannot be ignored or dismissed as a mere formality. "Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial." *Musser v. Gentiva Health Services*, 356 F.3d 751, 757-58 (7th Cir. 2004) (internal

citations omitted). Failing to properly disclose experts may result in prejudice to an opposing party "because there are countermeasures that could have been taken that are not applicable to fact witnesses, such as attempting to disqualify the expert testimony . . . , retaining rebuttal experts, and holding additional depositions to retrieve the information not available because of the absence of a report." *Id.* "The expert witness discovery rules are designed to aid the court in its fact-finding mission by allowing both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case." *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). *Cf. DR Systems, Inc. v. Eastman Kodak Co.*, 2009 WL 2982821, at *3 n. 2 (S.D. Cal. Sept. 14, 2009) (noting that the "purpose of the Rule 26(a)(2) disclosure requirement is to prevent surprise testimony by ensuring that opposing parties are aware of the nature of the expert opinions prior to trial"); *Meyers v. National R.R. Passenger Corp.*, 648 F. Supp. 2d 1032, 1042 (N.D. Ill. 2009) ("The purpose of the Rule 26(a)(2) disclosure requirements is to 'set forth the substance of the direct examination' of the expert witness.").

Rule 26(a)(2) also addresses the timing of expert disclosures, stating that "these disclosures" must be made "at the times and in the sequence that the court orders." The Advisory Committee has acknowledged that "in most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue." *See* Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26. Absent a stipulation or a court order, "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)," disclosure of the rebuttal expert must occur "within 30 days after the other party's disclosure." *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).

Although the parties disagree on what constitutes "rebuttal expert opinion," resolution of the pending motion turns on the narrower issue of timing. By its very terms, Rule 26(a)(2)(D)(ii) suggests that Plaintiff's rebuttal expert should have been disclosed on or before March 4, 2012. *Cf. Smetzer v. Newton*, 2012 WL 2064507, at *1 (N.D. Ind. June 7, 2012) ("when neither the Court nor the parties set a deadline for rebuttal expert witnesses, Rule 26(a)(2)(D)(ii) applies, requiring a plaintiff to serve any rebuttal report no later than thirty days after the defendant's expert disclosures"). Having missed that deadline, it was incumbent upon Plaintiff to seek relief from the court on a timely basis.

This court has an independent responsibility for case management. "The desirability of some judicial control of discovery can hardly be doubted. Rule 16, as revised, requires that the court set a time for completion of discovery and authorizes various other orders affecting the scope, timing and extent of discovery and disclosures." *See* Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(f). *Cf. Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 693 (D.N.M. 2003) (the case management elements of Rule 16 are based on the "recognition that cases can move efficiently through the federal system only when courts take the initiative to impose and enforce deadlines"). As the Tenth Circuit has acknowledged,

> While on the whole Rule 16 is concerned with the mechanics of pretrial scheduling and planning, its spirit, intent and purpose is clearly designed to be broadly remedial, allowing courts to actively manage the preparation of cases for trial . . . [T]here can be no doubt that subsection (f), added as part of the 1983 amendments to Rule 16 indicates the intent to give courts very broad discretion to use sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior . . . but that they fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial.

*Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1555 (10th Cir. 1996), quoting *Matter of Sanction of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984).

As this court noted in *Cassirer v. San Miguel County Board of County Commissioners*, 2009 WL 1844326, *5-6 (D. Colo. June 23, 2009), Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." *See* Fed.R.Civ.P. 16(b)(4). *See also* D.C. COLO. LCivR 16.1 ("The schedule established by a scheduling order shall not be modified except upon a showing of good cause and by leave of court"). This "good cause" requirement reflects the important role a scheduling order plays in the court's management of its docket. *Cf. Washington v. Arapahoe County Department of Social Services,* 197 F.R.D. 439, 441 (D. Colo. 2000) (noting that a "scheduling order is an important tool necessary for the orderly preparation of a case for trial"). *See also Rent-a-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 101 (S.D.N.Y. 2003) ("scheduling orders are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed"); *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) ("a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril").

The "good cause" standard requires the moving party to show that despite his diligent efforts, he could not have reasonably met the scheduled deadline. *See Pumpco, Inc. v. Schenker International, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001). *See also* Advisory Committee Notes to 1983 Amendment to Fed. R. Civ. P. 16(b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension"). The good cause standard "primarily considers the diligence of the party seeking the amendment." *Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 105 (D.D.C. 2005) ("[m]ere failure on the part of counsel to proceed promptly with the normal processes of

discovery and trial preparation should not be considered good cause"). *Cf. New York Life Insurance Co. v. Morales*, 2008 WL 2622875, *3 n.3 (S.D. Cal. July 1, 2008) (finding that defendant's failure to pursue available and clearly relevant discovery undercut his claim of reasonable diligence under Rule 16(b)(4)); *Widhelm v. Wal-Mart Stores, Inc.*, 162 F.R.D. 591, 593 (D. Neb. 1995) (holding that parties are not entitled to relief from pretrial deadlines where those parties have been lax in conducting discovery); *Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D. Me. 1985) (holding that the movant had not established "good cause" under Rule 16(b)(4) where counsel failed to immediately undertake discovery and sought a belated extension of pretrial deadlines).

Under the particular facts of this case, I find that Plaintiff has failed to meet the good cause standard required by Rule 16(b)(4). It is undisputed that Defendant identified its experts and provided Rule 26(a)(2)(B) disclosures on February 1, 2013; 58 days before the March 30, 2013 discovery cutoff. Ms. Davies and her counsel had ample time to designate a rebuttal expert pursuant to Rule 12(a)(2)(D)(ii), or to affirmatively move to amend the scheduling order. Plaintiff's current dilemma stems from ill-advised tactical decisions, rather than deadlines established by this court. Rather than invoking the 30-day window for designating rebuttal experts provided by Rule 26(a)(2)(D)(ii), Plaintiff chose to wait until March 26, 2013, four days before the discovery cutoff date, to file her Motion to Exclude. Counsel must have known that briefing on that motion would not be completed until after the discovery deadline, *see* D.C.COLO.LCivR. 7.1C, and that any subsequent attempt to re-open expert discovery therefore would require a showing of good cause. *But see Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759-60 (8th Cir. 2006) (holding that "tactical decision[s]" do not provide good cause to

15

modify case management orders); *Long v. Ford Motor Co.*, 2009 WL 903404, at *3 (D. Ariz. Apr 1, 2009) ("[a] tactical decision to delay does not merit good cause"); *United States v. $33,330.00 in U.S. Currency*, 901 F. Supp. 2d 1354, 1359 (N.D. Ga. 2012) (while acknowledging that the moving party had made a tactical decision to delay formally raising a suppression issue, "[s]uch a tactical decision does not establish good cause").

In pursuing this course of action, Plaintiff's counsel must have understood that an unsuccessful motion would require Ms. Davies to forego a rebuttal expert or come forward with sufficient facts to meet the Rule 16(b)(4) good cause standard. This court made that same point during the hearing on April 18, 2013. The pending motion is denied because Plaintiff has failed to establish good cause under Rule 16(b)(4). *Cf. Barnes v. District of Columbia*, 289 F.R.D. at 15 (holding that defendant had not established "good cause" under Rule 16(b) where the defendant failed to take advantage of the opportunity to timely designate a rebuttal expert).

As I indicated during the hearing on April 18, 2013, this court unquestionably has the authority to re-open expert discovery to allow Plaintiff to designate a rebuttal expert.[14] In *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987), the Tenth Circuit suggested that various factors are relevant to the court's assessment of whether discovery should be reopened, including:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the

---

[14]As the court has not absolutely foreclosed the possibility of Plaintiff designating a rebuttal expert upon a showing of good cause, there is no need, at this juncture, to address Fed. R. Civ. P. 37(c)(1) (providing that a party that "fails to . . . identify a witness as required by Rule 26(a)" may not use that witness to supply evidence at trial, "unless the failure was substantially justified or is harmless").

16

>   foreseeability of the need for additional discovery in light of the time allowed for
>   discovery by the district court, and 6) the likelihood that the discovery will lead to
>   relevant evidence.

*Id.* at 169. Applying these factors to the instant case, Plaintiff has not left himself in a strong position.

The district court recently set a seven-day trial in this case to begin on February 18, 2014. Given that trial date, Plaintiff will argue that the belated designation of a rebuttal expert will not prejudice Defendant. Rule 26(a)(2) disclosures "serve[ ] primarily to require disclosure of expert testimony early enough before trial to allow parties and counsel adequate time to prepare cross-examination, confer with their own experts, and file any supplementations." *Dixon v. The Certainteed Corp.*, 168 F.R.D. 51, 54 (D. Kan. 1996). "Both the court and Defendant[ ] are entitled to expect that by a date certain, Plaintiff's list of testifying experts will be fixed and the case will proceed on that basis" *Fresquez v. Baldwin*, 2010 WL 5934891, at *28-29 (D. Colo. Dec. 15, 2010) (in denying plaintiff's untimely attempt to designate an expert witness, observed that plaintiff "should not be permitted to justify an untimely designation by implicating the court"). It is not unreasonable to presume that Plaintiff's belated disclosure of a rebuttal expert will likely require Defendant to incur additional expense in deposing the newly disclosed expert, consulting with its own experts, and supplementing their reports. *Cf. Saudi v. Northrup Grumman Corp.*, 427 F.3d 271, 278-79 (4th Cir. 2005) (suggesting that a party's failure to provide proper expert disclosures "unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case."); *Quintana v. Edmond*, 2009 WL 1798219, *2 (D. Colo. June 23, 2009) (observing that "[t]here can be no doubt that allowing Plaintiff to take additional discovery requires Defendants to incur

additional and unanticipated expenses, even if just limited to interviews and will impact their ability to prepare for trial").

But more to the point, lack of prejudice to the non-moving party does not establish "good cause" for purposes of Rule 16(b)(4). *Capital Solutions LLC v. Konica Minolta Business Solutions USA, Inc.*, 2009 WL 3711574, at *8 (D. Kan. Nov. 3, 2009) (rejecting the argument that an untimely motion to amend should be granted because the non-moving party "will have ample time to prepare its defense"). *Cf. Soo Line Railroad Co. v. Werner Enterprises*, 2013 WL 2434880, at *7 (D. Minn. June 4, 2013) ("a court will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines"); *Ingle v. Dryer*, 2008 WL 1744337, at *1 (D. Colo. Apr. 11, 2008) ("The Rule 16(b)(4) standard 'does not focus on the bad faith of the movant or the prejudice to the opposing party[; r]ather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment.'").

As previously noted, Plaintiff was not diligent in identifying and disclosing a putative rebuttal expert within the time allowed for discovery in the scheduling order. By February 1, 2013, Plaintiff's counsel knew the nature and scope of the opinions proffered by Defendant's experts and, therefore, was capable of making an informed decision regarding a rebuttal expert. Rather than erring on the side of caution and designating a rebuttal expert before the close of discovery, counsel chose instead to rely solely on a motion to strike Defendant's experts. *But see Harris v. Chicago Title Insurance Co.*, 694 F.3d 935, 949 (8th Cir. 2012) (while a party has the prerogative to make tactical decisions, an ill-advised decision "hardly constitutes good cause" under Rule 16(b)).

Finally, in moving for leave to designate a rebuttal expert out of time, Plaintiff asks the

court to rule in a vacuum, without any assurance that the proffered expert will provide proper rebuttal opinions. It is not at all clear that Plaintiff actually has retained a rebuttal expert or arranged for the preparation of a rebuttal report. The court is left to guess as to how much time the expert may require to prepare a report and what opinions may appear in this phantom rebuttal expert report.[15] *But see Stanfield v. Dart*, 2013 WL 589222, at *3 (N.D. Ill. Feb. 14, 2013) (holding that a proper rebuttal report is "limited to contradicting and rebutting evidence on the same subject matter identified by another party in its expert disclosures;" "[a] party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief") (internal citations omitted); *Smith v. Wal-Mart Stores, Inc.*, 2012 WL 4051925, at *1(D. Nev. Sept. 13, 2012) (holding that a rebuttal expert disclosure is not intended to provide an extension of the deadline by which a party may deliver the lion's share of its expert's information); *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) (noting that expert rebuttal testimony is not an opportunity to cure oversights in a party's case-in-chief). It seems reasonable to assume, based on past experience in this case, that further motion practice may result when, and if, a rebuttal expert is disclosed. *See, e.g., Noffsinger v. Valspar Corp.*, 2011 WL 9795, at *6-7 (N.D. Ill. Jan. 3, 2011) (limited a rebuttal expert's opinions to his critique of defendants' experts and striking parts of the report that exceeded the scope of a proper rebuttal witness). *Compare EEOC v. JBS, USA, LLC*, 2013 WL 3302429, at *6-8 (D. Colo. July 1, 2013) (striking portions of plaintiff's proffered rebuttal expert report after reviewing the actual report

---

[15]The court's evaluation is further complicated by the fact that I have not been provided with the Plaintiff's initial expert disclosures, thereby making it difficult to determine whether or to what extent the rebuttal expert may offer opinions that duplicate the testimony of Plaintiff's affirmative experts.

in detail and comparing that report to the anticipated testimony of defendant's expert); *RMD, LLC v. Nitto Americas, Inc.*, 2012 WL 5398345 (D. Kan. Nov. 5, 2012) (striking portions of the proffered testimony of defendant's rebuttal experts after reviewing the experts' report). I can appreciate Plaintiff's desire to minimize litigation costs by avoid unnecessary expert fees. However, given the close of discovery and an impending trial date, I am not prepared to grant a motion so lacking in specific information.

Accordingly, for the foregoing reasons, Plaintiff's Motion to Permit Disclosure of Plaintiff's Rebuttal Expert is denied.

Dated this 18th day of July, 2013.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge