**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 12-cv-01490-RM-CBS

KARL T. ANDERSON, solely in his capacity as
Chapter 7 Trustee for the bankruptcy estate
of Robert Leone Davies and Amber Tracey Davies,

      Plaintiff,

v.

SEVEN FALLS COMPANY, a Delaware corporation, d/b/a
THE NEW SEVEN FALLS COMPANY, d/b/a/
THE COTTAGE COMPANY, d/b/a/
SEVEN FALLS PIPELINE & RESERVOIR

      Defendant.

---

## ORDER

---

This matter is before the Court on Defendant's Motion for Summary Judgment based on Judicial Estoppel Pursuant to Fed. R. Civ. P. 56 (ECF No. 70) (the "Motion").  The Motion has already been granted in part and denied in part by oral ruling of this Court on January 23, 2014 at the Trial Preparation Conference.  (*See* ECF No. 135.)  Below, the Court sets forth its reasoning.

## I. BACKGROUND

The relevant facts, taken in the light most favorable to Plaintiff, are as follows:

In June of 2010, Amber Davies[1] and her future husband were visiting Seven Falls, a natural canyon tourist attraction in Colorado Springs run by Defendant, and stepped into a gap in a walkway.  As a result, she twisted her ankle and injured her foot.  Ms. Davies contends the

---

[1] The events giving rise to her claim of injuries occurred prior to her marriage.  At that time, she was Amber Mazurette.  She has since married and is now Amber Davies.  She is referred to as Amber Davies throughout this Order.

ankle injury later developed into Complex Regional Pain Syndrome ("CRPS") and that she has a permanent and serious impairment.  (ECF No. 82 at 2.)

In August of 2010, Ms. Davies entered into a fee agreement with counsel to pursue compensation for her injuries from Defendant.  In a letter dated August 26, 2010, entitled "Notice of Claim and Representation," Ms. Davies' attorneys, on her behalf, informed Seven Falls' insurance company of her injury and asked for "copies of any photographs or estimates associated with event."  (ECF No. 92-1 at 1.)  By November of 2010, counsel had hired a private investigator, who began interviewing former employees of Seven Falls.

In March 2011, Ms. Davies was first diagnosed with CPRS.  CPRS is, according to the Mayo Clinic definition, "an uncommon form of chronic pain that usually affects an arm or leg. Complex regional pain syndrome typically develops after an injury, surgery, stroke or heart attack, but the pain is out of proportion to the severity of the initial injury, if any." *See* Mayo Clinic website, at http://www.mayoclinic.org/diseases-conditions/complex-regional-pain-syndrome/basics/definition/con-20022844.  Ms. Davies alleges economic losses between two and five million dollars, additional sums for past and future wage loss and medical bills, and further sums for exemplary damages.  (ECF No. 105 at 2.)

On June 3, 2011, counsel for Ms. Davies submitted a "Bodily Injury Settlement Demand" to Defendant's insurer on her behalf.  The next day, on June 4, 2011, Ms. Davies married Sergeant Robert Davies.  On July 15, 2011, Ms. Davies and her husband together filed a Chapter 7 Bankruptcy Petition in California, where she now resides.  (ECF No. 82 at 2.)  They retained Genesis Law Group as bankruptcy counsel.  Ms. Davies' claims against Defendant were not disclosed in her bankruptcy proceeding—not in her schedules, nor at her creditors meeting, nor elsewhere.

In connection with the instant Motion, Ms. Davies submitted an affidavit which states that in July 2011 she met with her bankruptcy firm and specifically "worked with a Genesis paralegal, Chris Kim." She "was told to fill out a form that asked specific questions about my finances and property." (ECF No. 82-1 at 2.) Ms. Davies notes that the form contained the question "Over the past year, have you, your children or your spouse been involved in an accident where someone was hurt, for example a car accident?" (*Id*.) Ms. Davies says that, in response to this question, she told Mr. Kim that she was injured at Seven Falls but that it had not occurred within the year, and "asked him if this needed to be included" and "[h]e did not tell me to include this information or that it needed to be disclosed as part of the Petition." (*Id*.) The affidavit continues:

> Mr. Kim did ask if I planned to file a lawsuit in the near future. I said I did not think so but I had hired an attorney trying to get my medical bills covered. He also asked if I had filed a suit in court as a result of that incident. I told him no. In response, he did not tell me that I needed to include this information about the Seven Falls incident…. I understood from our conversation that the Seven Falls incident was not required to be listed.

(*Id*. at 3.)

The form Ms. Davies referenced in her affidavit has been reviewed by the Court. In the "Statement of Affairs" section, the specific question Ms. Davies quoted above was included, but so were the following questions on the very same page:

> Do you expect to receive any money from any insurance claim, for any reason, during the next six (6) months?
>
> In the near future, do you expect to settle, win or begin a case for personal injury?
>
> Even if you never expect to collect, does anyone owe you any money for any reason whatsoever?

Ms. Davies answered these items "no," and did not disclose the Seven Falls claims in response. Ms. Davies was silent as to these questions in her affidavit.

Ms. Davies did include in her debt listings in bankruptcy court certain medical expenses incurred in connection with the injuries allegedly sustained at Seven Falls in June 2010.  Among these were debts owed to a collection agency for Penrose Hospital and a bill from Online Radiology Medical Group—debts incurred for diagnosis and treatment of the ankle injury at Seven Falls.

Additionally, Ms. Davies failed to report income she received from a job she had as a waitress and shift leader for Lonestar Steak House in 2009, instead stating that the only income she received in 2009 was from unemployment.

Ms. Davies was also required to list all addresses which she occupied during a three-year period prior to filing for bankruptcy.  Ms. Davies did not report that she resided in Colorado from July of 2008 to September of 2009.  She acknowledges all of these omissions in her affidavit, but states that that they were simply an oversight: "[a]ny omission by my not catching on review of bankruptcy documents that I left out my income as a waitress/shift leader from Lonestar Steak House in 2009 and any prior address was inadvertent on my part."  (ECF No. 82-1 at 3.)

In October of 2011, Ms. Davies received a discharge of her debts in her bankruptcy proceeding.  In approximately June of 2012, the diagnosis of CRPS was confirmed by another treating physician.  (ECF No. 82-1 at 2.)  On June 8, 2012, she filed a complaint launching the instant suit.

In March of 2013, Ms. Davies' attorney disclosed the instant suit to the bankruptcy trustee, who reopened the proceedings in bankruptcy court.  Within one month, a Motion for

Substitution of Party Filed by Real Party in Interest had been filed by Karl T. Anderson (the "Trustee").  The Trustee retained the same counsel that represented Ms. Davies when she was the plaintiff herein.  Defendant contends this was the first notice it had of Plaintiff's bankruptcy case.  On April 30, 2013, Defendant filed the instant Motion.

The recovery sought in this litigation is, as noted above, multiple millions of dollars.  It exceeds any sum necessary to satisfy the claims of creditors and the Trustee's fees and costs. Any excess recovery by the Trustee would be required to be surrendered back to Ms. Davies.

## II. LEGAL STANDARD

This Court has jurisdiction over this matter by virtue of the diversity statute, 28 U.S.C. § 1332.

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc*., 210 F.3d 1132, 1136 (10th Cir. 2000).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. ANALYSIS

Judicial estoppel is an equitable remedy "foremost designed to protect the federal judicial process." *Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007).  The purpose of the doctrine is to ensure "a federal court's ability to protect itself from manipulation" "by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).  According to *Eastman*, there are a variety of factors that might cause a court to invoke the doctrine, but three in particular are typically part of the inquiry:  First, a parties' position must be clearly inconsistent with its previous position.  Second, the party must have been successful in persuading a court to accept the previous position.  Third, "the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped."  *Id.*  These factors and additional matters have been considered.

In this case, Ms. Davies failed to disclose her claim against Seven Falls to the bankruptcy court or her creditors.  By her silence, she took the position that no claim against Seven Falls existed.  Ms. Davies was successful in having the bankruptcy court accept her position, as her debt was discharged without recourse to her Seven Falls claim.  Subsequent to being discharged, which worked to her advantage, she filed a claim in this Court, thereby creating a clear inconsistency.  Ms. Davies gained an advantage against her creditors in the bankruptcy case.  She maintained an advantage in this case, at least, by securing any potential recovery solely for her benefit as well as potentially by having debt discharged which she might also recover as damages.

Much later, months after filing her claim, counsel for Ms. Davies disclosed the litigation against Seven Falls to the Trustee, and the Trustee was substituted as the real party in interest in

this proceeding.  At that point, Ms. Davies' bankruptcy case, which had closed without any notice of the Seven Falls claim, was re-opened.  The eleventh hour disclosure to the Trustee remains largely unexplained.  Defendant contends that the disclosure likely occurred because of the deposition of Mr. Davies, which had occurred one month before.  According to Defendant, in that deposition, Mr. Davies referenced a house that "he used to own."  When asked if he sold it, his response was that he "got rid of it."  When pressed, that was his only explanation.  Defendant believes that the means by which Mr. Davies "got rid of it"—bankruptcy—was soon to be discovered, or at least Mr. and Ms. Davies feared so.  That fear led to the disclosure, according to Defendant.  As for Ms. Davies, she offered only the vague and conclusory statement that her attorney "[i]n March 2013… learned that my claim against Seven Falls had not been disclosed in the 2011 bankruptcy proceedings and that perhaps it should have been." (ECF No. 82-1 at 4.)

Even accepting all reasonable inferences in favor of Ms. Davies, there has been no meaningful explanation proffered as to how this matter came to be "learned" by counsel or why the disclosure to the Trustee occurred only in 2013.  These matters stand as suspicious eleventh hour changes of heart.

### A. Judicial Estoppel Against Ms. Davies[2]

There is no dispute that the Seven Falls claim was not disclosed to the Trustee at the time of the original bankruptcy proceedings.  Nor is there meaningful dispute that Ms. Davies stood to benefit from the omission.  Nonetheless, Ms. Davies opposes the Motion on a number of bases.

---

[2] Neither party has objected to the consideration of the principle of judicial estoppel as applied to Ms. Davies even though she is technically no longer a plaintiff in these proceedings.  Because of the parties' positions, the Court considers whether the doctrine should be applied both against Ms. Davies and against the Trustee. Due to the fact that the recovery sought in this proceeding outstrips any amount that would be needed to satisfy the Trustee, Ms. Davies has a real and significant interest in the recovery in this case because of the potential for the Trustee to return excess recovery back to her.  Indeed, at the Trial Preparation Conference, documents submitted in connection with the then-pending trial consistently referred to Ms. Davies as a Plaintiff.  Even after my oral ruling, briefings submitted by Plaintiff's counsel refer to her as Plaintiff Davies.  (ECF No. 140.)

Ms. Davies' first basis of opposition is that her omission was inadvertent; therefore, estoppel should not be applied.  There are two responses:  First, the case law suggests that inadvertence does not exist where Ms. Davies had knowledge of the claim and motive to conceal.  "Where a debtor has both knowledge of the claims and a motive to conceal them, courts routinely, albeit at times *sub silentio,* infer deliberate manipulation."  *Eastman*, 493 F.3d at 1157.  Both knowledge and motive are present here.  It is inconceivable that she did not have knowledge of the claim, or simply forgot about it during her bankruptcy proceedings.  Her injury has been described as horrifically painful, for one, and for another, her attorney filed a notice of claim and settlement demand in advance of the bankruptcy proceedings.  Also, debts related to her injury were listed as liabilities.  As for motive, it is easy to discern—to keep the proceeds of the Seven Falls claim for herself,[3] rather than for her creditors.

Second, even were I to consider inadvertence outside of the narrow constructs suggested by the case law, the evidence compels the conclusion that there was no inadvertence here.  Ms. Davies failed to disclose a number of things in her bankruptcy proceeding, including income and a residence in Colorado, and she claims that all of these omissions were simply inadvertent.  But that contention, except as to omission of the Seven Falls claim, is both self-serving and conclusory.  As for the Seven Falls claim, Ms. Davies attempts in part to blame a Genesis paralegal for her failure to disclose the claim, but her blame-shifting fails.

As noted by the Tenth Circuit in *United States v. McIntosh*, Ms. Davies had a duty to provide complete and accurate information on her bankruptcy schedules, and that duty was hers specifically, regardless of whether she was represented by counsel.  124 F.3d 1330, 1334 (10th

---

[3] It is not clear that at the time of the original bankruptcy proceeding, the Seven Falls claim had the monetary value potential it now possesses.

Cir. 1997) ("In a bankruptcy proceeding, the duty to disclose assets falls upon the debtor—whether or not that debtor is represented by counsel.").  Moreover, the blame-shifting based on a conversation about one question utterly fails when Ms. Davies stands silent as to why the following questions did not spark her memory or, at least, trigger further inquiry:

> Do you expect to receive any money from any insurance claim, for any reason, during the next six (6) months?
>
> In the near future, do you expect to settle, win or begin a case for personal injury?
>
> Even if you never expect to collect, does anyone owe you any money for any reason whatsoever?

I find and conclude that Ms. Davies' omission with respect to the Seven Falls claim was not inadvertent.

Closely connected to the inadvertence contention is a proposition advanced in by counsel, but not clearly supported by Ms. Davies in her affidavit.  The proposition is that there was no "lawsuit" in place at the time of bankruptcy—only, at most, a potential legal claim of uncertain value.  Counsel argues that a lay person might not recognize this as a "legal claim" required to be disclosed.  This, it is claimed, distinguishes the circumstances at issue here from those presented in *Eastman*.  The Court rejects this argument as well.  Ms. Davies' bankruptcy counsel's form clearly asked about potential claims, and did so in a straightforward manner which would indicate to a lay person that the Seven Falls claim was required to be disclosed.

Ms. Davies responds further with the claim that estoppel principles are a matter of state law in this diversity case.  According to Ms. Davies, Colorado law has a higher standard than is applied in federal law, requiring proof of an "intentional effort to mislead" which Ms. Davies contends is lacking here.  This argument is specious.  Ms. Davies elected to file her complaint in federal court.  Bankruptcy is, of course, solely a federal court matter.  The interests and processes

sought to be protected in this matter are federal court interests.  "[A] federal court's ability to protect itself from manipulation should not depend upon the law of the state under which some or all of the claims arise."  *Eastman*, 493 F.2d at 1155.

Finally, Ms. Davies seeks to distinguish her case from the majority of instances where judicial estoppel has been applied by noting that in this case she disclosed the matter to the Trustee *before* the Defendant filed any motion.  Ms. Davies' position is that this essentially purges the earlier attempt at misleading the courts and removes any advantage she may have previously had, thus rendering application of the doctrine of judicial estoppel inappropriate.  I disagree.

As Ms. Davies recognizes in her pleadings, judicial estoppel is an equitable doctrine which the court may invoke at its discretion.  *New Hampshire*, 532 U.S. at 750.  As the Tenth Circuit noted in *Eastman*, the circumstances in which the doctrine is invoked "will vary."  *Id.* While true that *New Hampshire*, and thus *Eastman*, speak to factors which "typically inform the decision," neither court held that judicial estoppel cannot be invoked whenever a plaintiff reverses the direction of her prior conduct.

In this case, the reason for Ms. Davies' change of direction is, as noted, far from apparent.  Simple inadvertence has been rejected.  Counsel for Ms. Davies has suggested that at the time of bankruptcy, the Seven Falls suit was merely a potential claim of uncertain value.  But this hurts, rather than helps, Ms. Davies' position.  A reasonable interpretation could be that only after Ms. Davies was assured that the value of her claim would generate revenue in excess of the Trustee's needs was the claim then disclosed to the Trustee.  And that would be the very type of change of position "according to the exigencies of the moment" referenced in *New Hampshire*.

532 U.S. at 750.  Thus, the Court is unwilling to allow the mere fact that Ms. Davies changed her position to bar application of judicial estoppel.

Nonetheless, the Court might be inclined to exercise its discretion in favor of Ms. Davies if there were some satisfactory explanation of how and why this matter remained unreported to the Trustee for almost two years.  But there is no such explanation in this case.  As noted, there is a claim of inadvertence, which has already been rejected, coupled with an odd declaration by Ms. Davies that her lawyer "learned" in March 2013 that the matter had not been disclosed when "perhaps it should have been."  (ECF No. 82-1 at 4.)

The portions of her affidavit where Ms. Davies declares what her lawyer learned and when fails under Fed. R. Civ. P. 56(c)(4).  With no foundation, background or explanation, it is unclear how Ms. Davies can testify as to what her lawyer knew or when he knew it.  *See Bryant v. Farmers Insurance Exchange*, 432 F.3d 1114, 1122 (10th Cir. 2005) ("[I]t is clear that . . . if th[e] evidence is presented in the form of an affidavit [at summary judgment] . . . the evidence must be based on personal knowledge.").  Of course, if the basis of counsel's knowledge is that Ms. Davies told him, then at the very least she could explain overall circumstances to provide a basis for a determination that Ms. Davies' conduct should be excused.  But no such context is given, and the Court is left to guess as to a spectrum of possibilities ranging from innocent discovery on the one hand to awareness of a potential that Defendant might discover the bankruptcy on the other.

In these circumstances, I decline to sponsor or endorse a rule which sweeps aside manipulation and deceit whenever a plaintiff decides in the eleventh hour to reverse course.  To do otherwise would be to invite an attempt at manipulation and deceit with the recognition that there always remains an "out" or "safety valve" if an opposing party registers suspicion, if a

plaintiff decides the math works in her favor, or if plaintiff otherwise decides to forego the effort in the end stages of litigation.  The better rule is to discourage manipulation and deceit at the outset in all of its forms, and to excuse conduct that appears so only upon a full and complete explanation that credibly supports non-manipulative conduct.  That does not exist here.

To be clear, the Court is aware of the relative burdens in the summary judgment context. Applying the law to the facts before me has already led the Court to determine that judicial estoppel should be applied in this case.  Having reached that determination, the Court notes only that the exercise of its discretion might be influenced by some meaningful effort to explain the late disclosure.  Here, the effort is wanting.

I apply the doctrine of judicial estoppel against Ms. Davies individually. I find that there is no genuine dispute as to the material facts in this case, and that Ms. Davies had both knowledge of her Seven Falls claim and the motive to conceal it.  I find that her conduct was neither inadvertent nor otherwise non-manipulative, and that application of judicial estoppel is necessary to protect the integrity of the federal judicial system.

**B. Judicial Estoppel Against the Trustee**

The parties disagree as to whether the Court can and should apply the doctrine of judicial estoppel against the Trustee.  Defendants rely on the affirmance of the district court order in *Eastman* as an indication that the doctrine can be applied against the Trustee.[4]  Plaintiff cites *In Re Riazzudin* for the opposite proposition.  363 B.R. 177 (10th Cir. B.A.P. 2007).

I conclude that the law in the Tenth Circuit is such that I cannot apply judicial estoppel against the Trustee in a way which injures the Trustee's interests.  The Tenth Circuit has

---

[4] The district court opinion affirmed in *Eastman* did apply the doctrine of judicial estoppel as against the Trustee. And the Circuit did "affirm" that decision.  However, the Trustee's claims were resolved prior to appeal.  Thus, the affirmance, practically, was of the Order as it pertained only to the "true" plaintiff.

indicated, in the very case cited by Defendants in support of the Motion, that application of

judicial estoppel against a bankruptcy trustee based on the debtor's non-disclosure of a claim is

not appropriate.  In *Eastman*, the court observed that:

> Quite likely the district court's application of judicial estoppel against the trustee
> was inappropriate, at least to the extent [plaintiff]'s personal injury claims were
> necessary to satisfy his debts. *See Parker v. Wendy's Int'l., Inc.*, 365 F.3d 1268,
> 1271–72 (11th Cir. 2004). This is because at the time of the court's decision, the
> trustee as the real-party-in-interest had not engaged in contradictory litigation
> tactics. *See Cannon–Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("Judicial
> estoppel is an equitable doctrine, and it is not equitable to employ it to injure
> creditors who are themselves victims of the debtor's deceit.").

*Eastman*, 493 F.3d at 1155 n. 3.  This reasoning, dicta though it may be, is backed up in *In Re

Riazzuddin*, where the Tenth Circuit found that a trustee should not be penalized by the debtor's

post-petition misconduct.   363 B.R. at 188.  Thus, this Court reads both *Eastman* and *In Re

Riazzuddin*, as suggesting (at the very least) that I should not apply the doctrine of judicial

estoppel to the detriment of the Trustee. I therefore rule against Defendant on the Motion for

Summary Judgment, at least insofar as preventing any recovery against the interests served by

Plaintiff Karl T. Anderson in his capacity as Trustee.

Although I rule against the Motion in the above respect, I also conclude that I can apply

judicial estoppel as against the Trustee to the limited extent of any surplus recovery not needed

to satisfy any creditors or the Trustee's fees and costs.  In other words, I am applying the

doctrine to such amounts as would be surrendered back to Ms. Davies if a verdict is in Plaintiff's

favor.[5]  In the eyes of the Court it matters little whether this is characterized as application of the

---

[5] This approach was adopted in *EEOC v. Outback Steakhouse*, which held that the "Trustee's potential recovery is to
be capped at the level necessary to satisfy all creditors and the costs and fees incurred by this litigation" and made it
explicit that the debtor in that case was to be "prohibited from personally collecting monetary damages in the instant
action." No. 06-CV-01935-EWN-BNB, 2007 WL 2947326 (D. Colo. Aug. 27, 2007). The *EEOC* court based this
approach on the one "explicitly contemplated by the Eleventh Circuit in *Parker*, a case cited by the Tenth Circuit as
persuasive authority in *In re Riazzuddin*."  *Id*., citing 363 B.R. at 188; 365 F.3d at 1272 n. 3. As for any contrary

doctrine against the non-bankruptcy interests of the Trustee or as the shaping of an otherwise equitable remedy given the circumstances before the Court. Either way, the Court's intention is to use its discretion to shape an outcome where the Trustee is fully protected while Ms. Davies— against whom I have previously ruled—is subjected to the effect of the doctrine.

I so rule for three reasons. One, the 10th Circuit case law cited by both parties includes favorable references to *Parker*, an Eleventh Circuit case which contemplated such an outcome. 365 F.3d at 1272 n. 3. Two, judicial estoppel is an equitable remedy, and I have determined that equity requires that I apply the doctrine in a manner that does not permit Ms. Davies to circumvent its effects by hiding behind the Trustee. Third, I find that an equitable solution like the one at issue here is necessary to preserve the integrity of the doctrine of judicial estoppel. If it can be circumvented by Ms. Davies merely by substituting the Trustee and relying on him to surrender funds to her on the back end, the doctrine would be neutered.[6]

The Trustee and Ms. Davies' creditors should be made whole. Ms. Davies should not. This serves the logic of prior decisions, the logic of the doctrine of judicial estoppel, the interests of the innocent parties, and is simply the most equitable result given these circumstances.

---

authority within the Tenth Circuit, there is only one case that directly cites *EEOC* to distinguish its holding, an order by Judge Weinshank. *See Gilman v. Target Corp.*, No. 09-CV-00669ZLWKMT, 2009 WL 4611474 (D. Colo. Dec. 1, 2009) ("The Court cannot discern how judicial estoppel could be invoked to limit recovery in this action, when it is undisputed that the doctrine of judicial estoppel cannot be applied against the Bankruptcy Trustee, who will be the sole plaintiff going forward. Moreover, the issue does not seem to be one fit for resolution under Fed.R.Civ.P. 56(c)."). This Court is not aware of any other direct authority on this issue. As for Judge Weinshank's Order, while the point is well taken, given the circumstances before the Court and the fact that the Motion is based on an equitable doctrine, I simply disagree. A cap on the recovery available to the Plaintiff is the only way to meaningfully address both the 10th Circuit rule against enforcing judicial estoppel against the Trustee (as articulated by Judge Weinshank) and the logic behind the rule of judicial estoppel itself. Waiting until later in the proceedings to bar recovery in accordance with this doctrine would not be in the best interests of judicial economy.

[6] Also underlying my decision is the fact that the amount of the potential claims here—an amount in excess of five million dollars—so far exceeds the outstanding amounts owed to creditors in Ms. Davies' bankruptcy. Very few of the cases the Court has reviewed involved such a severe discrepancy and thus, such potential for abuse of the doctrine.

## IV. CONCLUSION

It is for these reasons that this Court GRANTED IN PART and DENIED IN PART Defendant's Motion for Summary Judgment Based on Judicial Estoppel in open court.  The doctrine of judicial estoppel will not be applied to block the claims of the Trustee Karl T. Anderson on behalf of Ms. Davies' creditors or the Trustee's interests, but it will be applied as to any recovery in excess of the referenced amount which would be surrendered back to Ms. Davies, effectively neutering the doctrine of judicial estoppel.  Recovery will be permitted to the limited extent of the creditor claims and such other sums as are necessary for the Trustee's fees and costs.

DATED this 12th day of February, 2014.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge